UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CRAIG W. STROEBEL
        Plaintiff

V.

PAUL RAINWATER, IN HIS OFFICIAL
CAPACITY AS EXECUTIVE DIRECTOR
OF THE LOUISIANA RECOVERY ACT

CIVIL ACTION NO. 2:10-cv-00691

SECTION I

JUDGE  LEMELLE

MAGISTRATE JUDGE  CHASEZ

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Craig W. Stroebel ("Stroebel") has sued Paul Rainwater in his official capacity as the Executive Director of the Louisiana Recovery Authority ("LRA") challenging the LRA and/or the Office of Community Development's determination to deny his  Road Home appeal, which requested an increase to his Road Home grant. As more fully detailed herein, Stroebel's claim against Rainwater and/or the LRA must be dismissed in its entirety.  Rainwater and the LRA is entitled to immunity under the Eleventh Amendment to the United States Constitution.  Alternatively, Stroebel's claims under the Fair Housing Act, the Housing and Community Development Act and the Stafford Act must be dismissed as well as he has not asserted any factual basis for such claims.  Finally, the extent Stroebel is seeking judicial review of his Road Home

grant award, this claim should be dismissed as there is no right to judicial review of Road Home grants.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Stroebel's Claims

Plaintiff Craig W. Stroebel filed this suit against Defendant Paul Rainwater, in his official capacity as the Executive Director of the Louisiana Recovery Authority, on February 26, 2010.  Stroebel claims  he purchased a home located at 3624 N. Hullen Street, Metairie, Louisiana, from Ting Zheng Hung and Chung Wai Hung on July 21, 2006; the agreement to purchase the home provided the sellers would release and assign any Louisiana Recovery Authority (Road Home) grants to Stroebel. (Complaint, Rec. Doc. 1, pp. 2-3, ¶¶ 1-2.) Thereafter, Stroebel received a Road Home grant in the amount of $59,741.01 in February 2009; again, this grant amount was for the property originally owned by the Hungs. (Rec. Doc. 1, p. 3, ¶ 3.)  Stroebel appealed the grant amount to the Road Home Appeals Office and the Office of Community Development (OCD); Stroebel's appeal was denied because he was not the original owner of the property. (Rec. Doc. 1, p. 3, ¶ 5.)  Stroebel claims the Road Home grant was improperly calculated because no one from OCD inspected the inside of the property to calculate the award amount. (Rec. Doc. 1, p. 4, ¶ 7.)  Further, Stroebel claims OCD improperly calculated the amount of the grant awarded to him and he is owed an additional $22,022.60. (Rec. Doc. 1, p. 4, ¶ 9.)

2

Stroebel asserts claims for deprivation of his civil rights under the Fair Housing Act of 1968, 42 U.S.C. § 1306 *et seq.*, Title I of the Housing and Community Development Act, 42 U.S.C. § 5301, *et seq.* and the Stafford Act, 42 U.S.C. § 5121.

### B.     The Road Home Program

Defendant Paul Rainwater provides the following background information for the Court's benefit and to provide an understanding of The Road Home program and its implementation. These facts are undisputed and are contained in Stroebel's Complaint. (See Rec. Doc. 1, pp. 5-8, ¶¶ 2-14.)

Following Hurricanes Katrina and Rita the Federal Government provided the State of Louisiana with $6.2 billion dollars in Community Development Block Grants ("CDBG") funds for disaster recovery and rebuilding efforts.  A supplemental award of $4.2 million in CDBG funds was subsequently awarded to the state through the Supplemental Appropriations Act.  Louisiana then developed a plan for disbursement of the CDBG funds to property owners affected by Katrina and Rita called "The Road Home Program."

On May 30, 2006, the U.S. Department of Housing and Urban Development ("HUD"), approved The Road Home program.  As further explained below, the Federal Appropriations Act requires the OCD to strictly comply with the Action Plans and Amendments approved by HUD in administering The Road Home program. *See* 42 U.S.C. § 5311(a). The OCD must stay within the narrow confines of the Action Plans

and Amendments in making all eligibility determinations and in its policies and procedures.

### 1.     Federal Appropriations Acts

Under the Federal Appropriations Acts, which govern the allocation, administration and use of the CDBG funds, the CDBG funds were appropriated by Congress to HUD to be used for disaster relief, long-term recovery and restoration of infrastructure. (Appropriations Acts, Exhibit B.) Once HUD allocated the funds to Louisiana, the funds were to be administered through an entity or entities designated by the Governor of each state; in Louisiana, that entity is the Louisiana Recovery Authority (LRA). (Exhibit B.)  The Division of Administration (DOA) was created pursuant to La. Rev. Stat. Ann. § 39:1, *et seq.*   DOA's function is to carry out "all administrative functions of the state," and the DOA is charged with the administration of CDBG programs in general.  *See* La. Rev. Stat. Ann. §§ 39:4; 49:663.1.  The OCD is an office within the DOA, and is authorized to administer The Road Home Program. La. Rev. Stat. Ann. § 40:600.62(2).

Importantly, the Federal Appropriations Acts do not allocate any fixed amount to any individuals or property owners. (Exhibit A.) In fact, the Federal Appropriations Acts do not even direct Louisiana to use the funds toward payments to property owners. (Exhibit A.)  Instead, the Acts simply require allocations to be used for long-term recovery and restoration of infrastructure.  (Exhibit A.)  The state determines the proposed use of the CDBG funds and criteria for eligibility. (Exhibit A.)  The Federal

4

Appropriations Acts entrust the administration of the CDBG funds to Louisiana and Louisiana has considerable discretion and authority to determine the proposed use of the funds and to fashion the most prudent means of disbursing the funds.  Indeed, Louisiana law also similarly vests the State with the discretion and authority to prudently administer the funds.  *See* La. Rev. Stat. Ann. § 49:220.1 *et seq.*  The State has inherent discretion necessary to administer the CDBG funds and is not restricted by applicable statutes or regulations.

### 2.    Action Plans and Amendments

Prior to the obligation of funds, Louisiana was required to submit Action Plans to HUD detailing the proposed use of all funds, including criteria for eligibility and how the use of the funds would address long-term recovery.  As required, Louisiana submitted its Actions Plans for both of the Federal Appropriations. (Actions Plan and Plan Amendments concerning The Road Home program are available at http://www.doa.louisiana.gov/cdbg/dractionsplans.htm.)

Louisiana's Action Plans, including the development of The Road Home Program, were submitted to HUD and approved by HUD prior to Louisiana receiving any CDBG funds; Louisiana is legally bound to the Action Plans and cannot deviate from them in any way.  In other words, the Action Plan and Plan Amendments are the controlling policies and procedures for the eligibility, disbursement and administration of CDBG funds and the OCD is unable to deviate from these proscribed policies and procedures for any individual applicant.

5

267836-1

In each of the Action Plans detailing the assistance available under the Road Home program, Louisiana stressed the nature and scope of available assistance, including the fact that available grants are not annually funded entitlement programs. Any CDBG funds paid to Louisiana property owners by the state under the Road Home program is thus an offer of assistance based on eligibility, and not an "entitlement." In Action Plan Amendment 1, which creates The Road Home Program, it states: "Eligible assistance does not represent an entitlement to the homeowner, under any circumstances." Likewise, it states:

> **Note that The Road Home is not an entitlement program and cannot go over budget.** If costs exceed budgeted projections, grant assistance to homeowners will have to be reduced, and the program would pro-rate benefits to all homeowners.

(Emphasis added.)

Thus, individual homeowners are not a grant beneficiary to the CDBG funds. Instead, the law and regulations illustrate that the State of Louisiana is the beneficiary of the federal grants. Where the funds are allocated to Louisiana to use for long-term recovery and restoration of infrastructure, individual homeowners simply have no interest or right recognized by law to challenge the administration of those grants.

### C.     The Road Home Program Policies

The Road Home Homeowner Program Polices are published and available to the public on the internet; these are program policies and directives as approved by HUD in the Action Plans. The Road Home policies contain provisions concerning the exact

scenario as described by Stroebel, i.e., whether an Assigned Owner has the right to appeal The Road Home grant award.   Homeowner Policy 18.4 clearly states:  "The Assigned Owner is not allowed to submit an appeal to The Road Home or to the State of Louisiana Office of Community Development."   In other words, The Road Home's policy dictates an Assigned Owner does not have the right to file an appeal on the original homeowners grant award; instead, the only person(s) who have the right to pursue the appeal procedures is the original homeowner.   Accordingly, since Stroebel admits he was an Assigned Owner, he was treated in accordance with The Road Home policy.

### III.   LAW AND ARGUMENT

**A.   The Standard for a Motion to Dismiss**

**1.   Dismissal under Fed. R. Civ. P. 12(b)(1)**

Federal courts have limited jurisdiction.   They may hear only those cases entrusted to them by a grant of power contained in either the Constitution on in an Act of Congress.  *City of Kenosha v. Bruno*, 412 U.S. 507, 511, 93 S.Ct. 2222, 37 L. Ed. 2d 109 (1973); *Howery v. Allstate Ins. Co.,* 243 F.3d 912 (5th Cir. 2001).  It is the plaintiff's burden of proof to establish that the court has subject matter jurisdiction to hear the case.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

In ruling on a motion to dismiss under Rule 12(b)(1), a court may look to: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or, (3) the

267836-1

complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). Where a court reviews extrinsic evidence for a Rule 12(b)(1) motion, no presumption of truthfulness attaches to the plaintiff's allegations. *Williamson v. Tucker,* 645 F.2d 404, 412-13 (5th Cir. 1981).

### 2.  Dismissal under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), a court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To avoid dismissal, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *In re Katrina Canal Breaches Litig.,* 495 F.3d at 205. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 127 S.Ct. at 1965.

Recently, in *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" *Ashcroft v. Iqbal*, 129 S.Ct.

at 1949; *see also*, *Twombly,* 127 S.Ct. at 1965.   Notwithstanding, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or the "formulaic recitation of the elements of a cause of action" in order to provide the "grounds" of "entitle[ment] to relief." *Id.* "Something beyond ... mere possibility ... must be alleged." *Id.*   A plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief. *Id.*  Conclusory allegations and unwarranted factual deductions will simply not suffice to avoid a motion to dismiss. *Ashcroft v. Iqbal*, 129 S.Ct. at 1949; *United States ex rel. Willard v. Humana Health Plan of Texas, Inc*., 336 F.3d 375, 379 (5th Cir. 2003).

**B.    Stroebel's Claims Against Rainwater and/or the LRA are Barred under the Eleventh Amendment**

The Eleventh Amendment bars Stroebel from pursuing his claims against Paul Rainwater and/or the LRA in federal court.

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against on the United States by citizens of another state, or by citizens or subjects of any foreign state.

(U.S. Const. amend XI).

It is axiomatic that the Eleventh Amendment "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).   The protection of the Eleventh Amendment "extends to any state agency or entity deemed an alter ego or arm of the state." *Perez*, 307 F.3d at 326.  The Eleventh Amendment not only bars suits against the state by citizens of another state, but also applies equally to suits against a state initiated by that state's own citizens.  *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 1662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).  This Court has previously dismissed a similar suit in *Robinson v. The Road Corporation*, 2010 WL 148364, at *1 (E.D. La. Jan. 12, 2010)(holding the plaintiff's claims against the LRA and the OCD were barred by the Eleventh Amendment).

Eleventh Amendment immunity is, however, subject to three primary exceptions:

     (1)    Congressional abrogation;

     (2)    Waiver by the state; and,

     (3)    Suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law.

*Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

**1. There Has Been No Congressional Abrogation**

Under the first prong of the abrogation test, in order for Congress to abrogate the state's sovereign immunity granted by the Eleventh Amendment, Congress must (1) intend to do so unequivocally and (2) act under a validate grant under of Congressional authority. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363-64, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The Supreme Court in *Edelman* held that a court will find waiver only where it is stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673. The purpose of this "stringent" test is to "to be certain that the state in fact consents to suit." *College Savings Bank v. Florida Pre-Paid Post Secondary Education Expense Board*, 527 U.S. 666, 675, 680, 119 S.Ct. 2219, 144 L.Ed2d 605 (1999). Thus, we will not find "consent by implication or by use of ambiguous language." *Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

Stroebel brought suit under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and the Housing and Community Development Act of 1974, 42 U.S.C. § 5301, *et seq*, and the Stafford Act, 42 U.S.C. § 5121. There is no express waiver of the State of Louisiana's sovereign immunity in the Fair Housing Act, in the Housing, Community Development Act and/or the Stafford Act. *See Gregory v. South Carolina Dept. of Transportation*, 289 F.Supp.2d 721 (D.S.C. 2003), *affirmed*, 114 Fed. Appx. 87 (4th Cir. 2004), *cert. denied*, 544 U.S. 999, 125 S.Ct. 1932, 161 L.Ed.2d 773 (2005).

**2. There Has Been No Waiver by Louisiana**

As for the second prong of the abrogation test, by statute Louisiana has explicitly declined to waive its Eleventh Amendment sovereign immunity regarding suits in federal court.  La. Rev. Stat. Ann. § 13:5106(A) provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."  Importantly, "a state does not waive its sovereign immunity through its mere receipt of federal funds or participation in a federal program." *Atasendero State Hospital v. Scanlon*, 473 U.S. 234, 246–47, 105 S.Ct. 142, 87 L.Ed.2d 171 (1985).  Instead, Congress must also express "a clear intent to condition participation . . . on a state's consent to waive its constitutional immunity."  *Id.* at 247; *Litman vs. George Mason University,* 186 F.3d 544, 554 (4th Cir. 1999) (recognizing Congress must "codify a clear, unambiguous and an unequivocal condition of waiver.")

### 3. This Suit is Not Against a State Officer for Prospective Injunctive and Declaratory Relief

In the instant case, Stroebel is presumably proceeding under the third prong of the abrogation test as this lawsuit is against Paul Rainwater, in his official capacity as the Executive Director of the LRA[1].  However, it is important to note that this lawsuit does not challenge the constitutionality of Paul Rainwater's actions as Executive Director of the LRA and does not seek prospective injunctive relief; thus the exception as explained in the seminal case of *Ex parte Young*, 209 U.S. 123, 28, S.Ct. 441, 52 L.Ed 714, 932 (1908) does not apply to this case.  Instead, Stroebel focuses only on his

---

[1] In fact, Paul Rainwater is not the Executive Director of the LRA. He resigned on December 23, 2009, and was replaced by Robin Keegan as Executive Director on January 1, 2010.

right to appeal his Road Home grant decision, and clearly is seeking retrospective relief only.  Stroebel seeks to have LRA to pay what he feels is the full amount he is owed by Road Home, in the sum of $22,022.60 plus legal interest, attorneys fees and costs. (Rec. Doc. 1, p. 9, *Prayer*.)

It is asserted that the State (through the LRA) is the real party in interest in this suit rather than Paul Rainwater.  *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974).   A state is the party with a substantiated interest when enforcement of the court's decree would effect the state's political or property rights. *Hopkins v. Clemson Agricultural College of South Carolina*, 221 U.S. 636, 642, 31 S. Ct. 654, 55 L.Ed. 890 (1911).  In order to safeguard such rights, sovereign immunity bars suits whose direct outcome will diminish the public treasury through the award of retroactive damages.  *Ford Motor Co. v. Dept of Treasury,* 323 U.S. 459, 464, 65 S. Ct. 347, 89 L.Ed. 389 (1945) ("…[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.")  For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interests and the Eleventh Amendment bars the suit.  *Edelman*, 415 U.S. at 663. Moreover, the Eleventh Amendment prohibits suits against states officials where the state is, in fact, the real party in interest.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101-02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The Court in *Pennhurst* noted:

> When the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself.  Although prior decisions of this Court have not been entirely consistent on this issue, certain principles are well established.  The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed 389 (1945). Thus, "[t]he general rule is that relief sought nominally against an officer is, in fact, against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58. 83 S.Ct. 1052, 1053, 10 L.Ed2d 191 (1093) (*per curiam*).  And, when the state itself is named as the defendant, a suit against state officials that is in fact a suit against the State is barred regardless of whether it seeks damages or injunctive relief.

*Pennhurst*, 465 U.S. at 101-102 (citations omitted).

What the plaintiffs were seeking in *Edelman* was a "reparation for the past," which would be "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials."  *Edelman, 414 U.S. at* 665, 668. The retroactive award that so concerned the *Edelman* court was compensation intended to repair harm caused by past acts is the  same relief requested by Stroebel in this case, and is identical to that sought in *Edelman*.

For purposes of the Eleventh Amendment, this Court must decide whether the relief being sought by Stroebel is prospective or retrospective, and the fact that Stroebel seeks judicial review to recalculate and adjust his grant award should be dispositive of this issue.  Again, Stroebel is seeking judicial review of his  Road Home grant and, further, seeking an increase in the amount of the grant.  It is clear from the Complaint that the Louisiana Recovery Authority and not its former Executive Director, Paul

14

Rainwater, is the real party in interest. (See Rec. Doc. 1, p. 5, § 1 "This suit is being brought against the LRA . . ..."; p. 8, ¶¶ 13, 15.)

      **4.     The *Coeur d'Alene* Exception Is Applicable.**

There is also a final layer of sovereign immunity analysis that also blocks Stroebel's suit.  The Supreme Court in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S. Ct. 2028, 138 L.Ed.2d 438 (1997) noted that even prospective relief (in *Coeur d'Alene* declaratory judgment) would be barred if the relief sought is the functional equivalent of relief otherwise barred by the Eleventh Amendment and "special sovereignty interests" are implicated.  *Coeur d'Alene,* 521 U.S. at 281.  In *Coeur d'Alene*, the plaintiffs sought a declaratory judgment establishing their rights to certain lands.  The court found that the suit was a "functional equivalent of a quiet title action which implicated special sovereign interests".  *Coeur d'Alene,* 521 U.S. at 281-82.

In this case, as it developed the Road Home program, the State of Louisiana ultimately chose to provide compensation and incentive grants to eligible homeowners affected by Hurricanes Katrina or Rita of up to $150,000. (See Rec. Doc. 1, p. 8, ¶ 12.)    The allocation of state funds by the State of Louisiana to provide compensation and incentive grants to those citizens damaged by Hurricanes Katrina and Rita is an important state interest.   Stroebel's attempt to compel the recalculation of his homeowner grant is an interference with a 'special sovereign interest' under *Coeur d'Alene* thus barring his claim under the Eleventh Amendment against Rainwater. See *Barton v. Summers*, 293 F.3d 944 (6th Cir. 2002)("Interference with the allocation of

state funds, where Congress has expressly enacted that states may allocate such funds as they please, is an interference with a 'special sovereign interest' under *Coeur d'Alene*.")

**C.    Stroebel Has Failed to State a Claim under the Fair Housing Act, the Housing Community Development Act and/or the Stafford Act**

Stroebel has made sweeping allegations that Rainwater and/or the LRA have "deprived Plaintiff of his civil rights under the Fair Housing Act of 1968; Title I of the Housing and Community Development Act of 1974; and the Stafford Act." (See Rec. Doc. 1, p. 8, ¶ 15; Rec. Doc. 1, p. 9, Prayer.)  However, Stroebel has utterly failed to allege any facts to describe how Rainwater and/or the LRA violated the Fair Housing Act, the Housing and Community Development Act and/or the Stafford Act.   For instance, while these laws contain non-discrimination provisions, i.e., prohibiting discrimination on the basis of race, color, national origin, sex, age, disability and other protected categories, Stroebel has not alleged he is a member of any of these protected categories or alleged any facts which demonstrate that Rainwater and/or the LRA treated him differently because his membership in any of these protected categories. See 42 U.S.C. §§ 3604(a), 3605(a); 42 U.S.C. § 5304 (b)(2); 42 U.S.C. § 5157.  In other words, Stroebel's complaint does not pass must with the requirements of  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Stroebel has failed to state a viable claim under any of these federal statutes.

267836-1

In any event, it is Defendant's position that the Fair Housing Act does not apply to The Road Home compensation grants because The Road Home is not a housing program, but instead provides compensation grants for use by eligible homeowners. These compensation grants are not restricted to be used on housing and/or housing repairs; instead, the homeowners have "complete discretion as to the use of the compensation grants." (See Action Plan, Seventh Amendment § 2.1, p.5; *see also*, § 2.1, p.5, "The covenants do not require program funds to be used to meet these conditions.")  Therefore, neither Rainwater nor the LRA has refused to sell or rent or make unavailable or denied a dwelling to Stroebel; likewise, neither Rainwater nor the LRA has engaged in residential real estate-related transactions with Stroebel as required to fall under the parameters of the Fair Housing Act. *See Cox v. City of Dallas*, 430 F.3d 734, 740 (5th Cir. 2005*), cert. denied*, 547 U.S. 1130, 126 S.Ct. 2039, 164 L.Ed.2d 783 (2006).

In addition, its is also Defendant's position that there is no private right of action for citizens to sue under the Housing and Community Development Act and/or the Stafford Act.  By their own statutory terms, only the Attorney General is authorized to bring a civil action for enforcement of these statutes. See 42 U.S.C. §5311(b)(2); 42 U.S.C. § 5157; *People's Housing Development Corporation v. City of Poughkeepsie*, 425 F.Supp. 482 (S.D. N.Y. 1976).

**D.     There Is No Right to Judicial Review of Road Home Grants**

Stroebel is clearly seeking the right to judicial review of The Road Home grant awarded to the original owners of the home (Ting Zheng Hung and Chung Wai Hung) who sold him the home located at 3624 N. Hullen Street and assigned Stroebel the right to The Road Home grant. It is clear from The Road Home policies that only the original homeowners have the right to appeal their Road Home grant award; Assigned Owners do not have the right to file an appeal. (Exhibit B.)

The Louisiana First Circuit Court of Appeal and Supreme Court have already considered the issue of whether Road Home grant awards are subject to judicial review in court. In *Dandridge v. The Office of Community Development*, 2009-1564, p.1 (La. App. 1 Cir. Dec. 7, 2009), 2009 WL 4724237, at *1, homeowners who were Road Home grant recipients sued the Office of Community Development (OCD), an agency of the Division of Administration, State of Louisiana, seeking judicial review, and ultimately an increase, of their Road Home grant; the Dandridges claimed OCD was "arbitrary and capricious" in determining and calculating their Road Home grant.  In response, OCD filed exceptions of no right and no cause of action, arguing homeowners do not have the right to judicial review. The trial court denied OCD's peremptory exceptions and OCD then filed a writ  application to the First Circuit Court of Appeals, arguing there was no statutory or constitutional right to judicial review of Road Home grant awards.  The First Circuit granted the writ and ruled in favor of OCD, reversing the trial court's ruling

on OCD's peremptory exception, and definitively ruling that there is no right to judicial review of Road Home grant awards. The First Circuit stated:

> The trial court's ruling of May 26, 2009, denying the Office of Community Development's peremptory exception raising the objections of no cause of action and no right of action hereby is reversed and judgment is entered sustaining the objections.  The Dandridges do not have a cause of action or a right of action for judicial review as provided for in La. R.S. 49:964, nor have plaintiffs shown that the Office of Community Development's calculation of their award pursuant to the Road Home Program was arbitrary and capricious or that plaintiffs have been deprived of a property right and entitled to due process in accordance with the Louisiana Constitution.  Therefore, the Office of Community Development's peremptory exception raising the objections of no cause of action and no right of action is granted and Gregory and Valrita Dandridge's suit is dismissed with prejudice.

Subsequently the Dandridges filed writs to the Louisiana Supreme Court; the Supreme Court  denied writs on March 10, 2010. Dandridge v. The Office of Community Development, 2010-0037 (3/12/10), 28 So.3d 1029.  Therefore, the definitive ruling is that homeowners/ grant applicants have no right and/or cause of action to seek judicial review of their Road Home grant applications or awards.  To the extent Stroebel is seeking judicial review of the Road Home grant award, it should be precluded and dismissed.

## IV. CONCLUSION

**WHEREFORE**, for the reasons set forth above, Defendant, Paul Rainwater, in his official capacity as the Executive Director of the Louisiana Recovery Authority, respectfully asks this Court to grant his Motion to Dismiss and dismiss with prejudice Plaintiff's Complaint in its entirety, at Plaintiff's costs.

Respectfully submitted,


/s/ Renee Culotta
**A.J. Krouse, La. Bar No. 14426**
**Renee Culotta, La. Bar No. 24436**
**Frilot L.L.C.**
1100 Poydras Street, Suite 3700
New Orleans, LA  70163
Telephone: 504-599-8085
Facsimile: 504-599-8267

**COUNSEL FOR DEFENDANT,**
**PAUL RAINWATER IN HIS OFFICIAL**
**CAPACITY AS EXECUTIVE DIRECTOR OF**
**THE LOUISIANA RECOVERY AUTHORITY**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of May 2010, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

L. Eric Williams, Jr.
3000 W. Esplanade Ave.
Suite 200
Metairie, LA 70002
eric@amlbenzene.net

20

/s/ Renee Culotta

267836-1